**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Sodonnie Leroy CHRISTOPHER, Catherine Lyvonne Allen, John Christopher, Beverly Anita Irby, a/k/a Mechiko Presley, a/k/a Tamiko Presley, Defendants–Appellants.**

**No. 89–7035.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 21, 1991.

---

Daniel L. McCleave, McCleave & Patterson, Mobile, Ala., for Sodonnie Christopher.

James M. Byrd, Mobile, Ala., for Catherine Lyvonne Allen.

Joseph O. Kulakowski, Mobile, Ala., for John Christopher.

J.B. Sessions, III, U.S. Atty. and E.T. Rolison, Asst. U.S. Atty., Mobile, Ala., for the U.S.

James W. Bodiford, Jr., Mobile, Ala. (court appointed), for Beverly Anita Irby.

Before JOHNSON and HATCHETT, Circuit Judges, and SMITH *, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In another crack cocaine case, we affirm the convictions of all the appellants, but vacate the sentence of one appellant and remand for resentencing of that appellant.

## FACTS

In July, 1988, the Mobile Police Department, Mobile, Alabama, received a tip that John Christopher, Catherine Allen, and Mechiko Presley were distributing cocaine. On July 29, 1988, Mobile police officers arrested Sodonnie Christopher and Jameson Christopher (two of John Christopher's sons) for the sale of crack cocaine.

In August, 1988, after surveillance of the residence at 2264 Joy Lane, Mobile, Alabama, Mobile police officers executed a warrant to search the residence. Upon their arrival at the residence, John Christopher ran down a hallway toward the rear of the residence in an attempt to escape. Upon being captured, John Christopher stated that his name was Billy Davis, and in his wallet, the police officers discovered false identification in the name of Billy

Davis. Later, while handcuffed, John Christopher again attempted to escape. Upon being recaptured, Christopher said: "if you were looking at the time I was looking at, you'd run too."

During the search of a bedroom, which John Christopher identified as his, the officers found a red suitcase containing: triple beam scales; one to two thousand small zip-lock bags; crack cocaine; several memo books; a heat-sealing machine; rulers; powdered cocaine in a small zip-lock bag; boxes of sandwich bags; a stapler or hole-punch; and a set of keys. The officers also discovered crack cocaine in a zip-lock bag, and a briefcase containing $4,970 in cash.

In addition to the memo books found in the red suitcase, the officers also found a memo book on a television set in the living room. These memo books contained the names of persons selling crack cocaine for John Christopher. In a bathroom in the house, the officers discovered a packet of crack cocaine wrapped in a zip-lock bag and $300 in the sink.

In addition to John Christopher, several other people were at the residence, including Catherine Allen, Mechiko Presley, Sodonnie Christopher, and Jameson Christopher. The Mobile Police Department's identification officer found Catherine Allen's fingerprints on two of the zip-lock bags found in the red suitcase. The officer also identified Mechiko Presley's fingerprints on two of the zip-lock bags, as well as on the seal-a-meal machine, found in the red suitcase.

## PROCEDURAL HISTORY

A grand jury charged John Christopher, Catherine Allen, Mechiko Presley and Sodonnie Christopher in a two-count indictment with (a) conspiracy to possess crack cocaine and cocaine base with intent to distribute (Count I), and (b) distribution and possession of crack cocaine and cocaine base with the intent to distribute (Count

---

* Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

II), in violation of 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 2.

Sodonnie Christopher pleaded guilty to Count I. After a trial, a jury found John Christopher, Catherine Allen and Mechiko Presley guilty on both counts of the indictment. At trial, Cheryl Martin, an indicted co-defendant, testified on behalf of the government against John Christopher, Presley, and Allen.[1]

The district court sentenced John Christopher to life imprisonment without parole, and a five year term of supervised release. Additionally, the district court sentenced Sodonnie Christopher to 360 months in prison followed by a five year supervised release period, Mechiko Presley to 360 months in prison and a ten year supervised release term, and Catherine Allen to 360 Months in prison and a ten year period of supervised release.

## CONTENTIONS

John Christopher, Presley, and Allen contend that the district court erred when it admitted into evidence the hearsay testimony of Cheryl Martin. John Christopher also contends that the admission of Martin's hearsay testimony violated his sixth amendment right to confront witnesses against him. Further, John Christopher, Presley and Allen contend that insufficient evidence supported their convictions. Additionally, John Christopher contends that the district court (1) abused its discretion when it denied his motion for a mistrial based upon the government's alleged violation of Fed.R.Crim.P. 16, and (2) erroneously sentenced him under the Sentencing Guidelines. Finally, Sodonnie Christopher maintains that the district court should have sentenced him under the Sentencing Guidelines. Consequently, he contends that his sentence should be vacated and, further, that he should be given the opportunity to withdraw his guilty plea.

In response, the government contends that the district court ruled properly.

## ISSUES

We address the following issues:

1. Whether the district court erred when it admitted in evidence Cheryl Martin's challenged testimony;

2. Whether sufficient evidence supported John Christopher's, Allen's and Presley's convictions for conspiracy to possess and possession of crack cocaine with intent to distribute;

3. Whether the district court abused its discretion when it denied John Christopher's motion for a mistrial;

4. Whether the district court erred when it sentenced Christopher under the Sentencing Guidelines;

5. Whether the district court properly sentenced Sodonnie Christopher under the Sentencing Guidelines; and

6. Whether Sodonnie Christopher should be allowed to withdraw his guilty plea.

## DISCUSSION

1. Martin's Testimony

*A. Rule 801(d)(2)(E)*

Federal Rule of Evidence 801(d)(2)(E) provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay and, consequently, may be offered in evidence for the truth of the matter asserted.

> When determining whether a co-conspirator's statement is admissible over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that there was a conspiracy involving the declarant and the defendant against whom the statement is offered, and that the statement was made during the course of and in furtherance of the conspiracy.

*United States v. Allison*, 908 F.2d 1531, 1534 (11th Cir.1990) (citing *Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987)). The

---

**1.** Martin pleaded guilty to Count I in return for the government's recommendation that she be sentenced to five years of probation.

determination as to whether (1) a conspiracy existed, (2) that the declarant and the defendant against whom the statement is offered were members of the conspiracy, and (3) that the statement was made during the course of and in furtherance of the conspiracy are preliminary questions of fact which "shall be determined by the court." Fed.R.Evid. 104(a); *see also Allison,* 908 F.2d at 1534.

We will only overturn the district court's findings of fact if they are clearly erroneous. *United States v. Perez,* 824 F.2d 1567, 1572 (11th Cir.1987). "[E]videntiary and other non-constitutional errors do not constitute grounds for reversal unless there is a reasonable likelihood that they affected the defendant's substantial rights; where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." *United States v. Hawkins,* 905 F.2d 1489, 1493 (11th Cir. 1990); Fed.R.Evid. 103.

### B. Confrontation Clause

The sixth amendment provides that in "all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him." U.S. Const. amend. VI. "Both the confrontation clause and the hearsay rule seek to balance the need for relevant, probative evidence against the defendant's interest in testing the accuracy of evidence through personal confrontation and cross-examination." *United States v. Lang,* 904 F.2d 618, 625 (11th Cir.1990) (quoting *United States v. Thevis,* 665 F.2d 616, 632 (5th Cir.Unit B), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982)).

"Despite the common root of the confrontation clause and the rules governing hearsay, not all hearsay will violate the confrontation clause." *Lang,* 904 F.2d at

625. In *United States v. Chapman,* 866 F.2d 1326 (11th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 321, 107 L.Ed.2d 312 (1989), we noted that the prosecution must meet two requirements before hearsay evidence will be admissible:

> First, the prosecution must show that the out-of-court declarant is unavailable to testify despite its good faith efforts to obtain his presence at trial. Second, the prosecution must show that the out-of-court statements bear sufficient indicia of reliability to provide the jury with an adequate basis for evaluating their truth.

866 F.2d at 1330 (citing *Ohio v. Roberts,* 448 U.S. 56, 64, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). "[C]onfrontation clause violations are subject to harmless error. In assessing harmless error in the context of confrontation clause violations, '[t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.'" *Lang,* 904 F.2d at 625–26 (citation omitted) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986)).

### C. John Christopher

■ John Christopher contends that the district court erroneously admitted Cheryl Martin's hearsay statement that "Well, I heard John cooked it [crack cocaine]."[2] Fed.R.Evid. 801, 802. Further, Christopher argues that the admission of this evidence violated his sixth amendment right to confront the witnesses against him. The government responds that the district court properly admitted this testimony as a statement of a co-conspirator. Fed.R.Evid. 801(d)(2)(E).

We find Martin's challenged testimony to be inadmissible under Fed.R.Evid.

---

**2.** Q. [MR. ROLISON]: And was the cocaine you sold cooked?
  A. [CHERYL MARTIN]: Yes, sir.
  Q. And did you know who cooked it?
  A. No, sir. I heard it was cooked in—
  MR. CLARK:
    I'm going to object to what she heard. It's hearsay.
  THE COURT:
    Overruled.

MR. ROLISON:
  Q. You can testify.
  A. Well, I heard John cooked it.
  Q. Who did you hear that from?
  A. I think one of his sons.
  Q. Which one?
  A. I think it was Donny.
  Q. He goes by Sadinne [sic]?
  A. Yes, sir.

801(d)(2)(E). First, it is unclear who made the statement at issue. *See United States v. Mouzin,* 785 F.2d 682, 692–93 (9th Cir.) (knowledge of the identity of the declarant is essential to establish foundation for admissibility of evidence under rule 801(d)(2)(E)), *cert. denied,* 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986). Initially, Martin testified that "I think one of his sons [made the statement]." Then, upon further questioning, Martin testified, again equivocally, that "I think it was Donny." Martin's uncertainty as to the identity of the declarant barely rises above the level of guesswork, and implicates the concerns which justify the general prohibition on hearsay evidence; namely, its lack of trustworthiness. *See, e.g., Lang,* 904 F.2d at 622; Fed.R.Evid. 802. Second, the district court at no time made a specific finding that the declarant (whether Donny or someone else) was (a) a co-conspirator with John

Christopher at the time the statement was made, and (b) that the statement was made during the course of and in furtherance of the conspiracy.[3] *See Allison,* 908 F.2d at 1534–35; *United States v. Fernandez,* 797 F.2d 943, 945–46 (11th Cir.1986), *cert. denied,* 483 U.S. 1006, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987).

■ Additionally, John Christopher objects to hearsay testimony elicited from Cheryl Martin about an argument between John Christopher and Bruce White regarding payment for the use of White's front yard to sell crack cocaine.[4] Again, we find that the district court erroneously admitted hearsay testimony. The district court failed to find that the alleged declarant, Bruce White, was a conspirator when the statements were made, or that the statements were made in furtherance of the conspiracy. *See Allison,* 908 F.2d at 1534–35. In fact, the district court concluded, in what may have been a misstatement by the

---

**3.** This case is distinguishable from *United States v. Dynalectric Co.,* 859 F.2d 1559, 1581–82 (11th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989). In that case, we held statements of a declarant to be admissible under rule 801(d)(2)(E) where, although the witness did not know the precise identity of the declarant, it was clear from the testimony and context of the out-of-court statements (1) that the witness was a member of the conspiracy, (2) that the declarant was associated with one of the corporate co-conspirators, and (3) that the statements were made in furtherance of the conspiracy. No such indicia of reliability are present in this case. Further, the district court in *Dynalectric,* unlike the present case, specifically admitted the statement pursuant to rule 801(d)(2)(E).

**4.** MR. ROLISON:

Q. Who did you hear talking about the argument between John Christopher and Bruce White?
A. I heard Bruce say something about it.
Q. What did Bruce say?
MR. CLARKE:
   I'm going to object to what Bruce said. It's hearsay.
THE COURT:
   Let me see you at the sidebar.
   (THE FOLLOWING OCCURRED AT THE SIDEBAR OUT OF THE HEARING OF THE JURY.)
THE COURT:
   Bruce White is not an indicted co-conspirator, and I overrule the objection.

(THE FOLLOWING OCCURRED IN THE PRESENCE AND HEARING OF THE JURY.)
   \*     \*     \*     \*     \*     \*
Q. You had heard about—You had talked to Bruce?
A. Un-huh. (Positive response.)
Q. You had heard about an argument that John and Bruce had gotten into?
A. Yes, sir.
   \*     \*     \*     \*     \*     \*
Q. Where did the conversation take place?
A. Me and Bruce was inside of his house when he was telling me about it.
   \*     \*     \*     \*     \*     \*
Q. All right. What was said?
A. Bruce just told me, he said he had got in an argument with the boys saying he was messing with one of the boys and came up and was arguing about it.
Q. What do you mean messing with one of the boys?
A. I think him and one of them had an argument.
Q. What was the argument about?
A. Bruce said somebody owed him some money or something. I told him I ain't knowed [sic] nothing about it.
Q. Owed money for what?
A. For working in his yard.
Q. Did he say who it was that owed him the money?
A. No, sir, he didn't.
Q. What boy was it that was supposed to have owed him the money?
A. He say Sodinne [sic] owed him some money.

district court or typographical error by the court reporter: "Bruce White is not an indicted co-conspirator, and I overrule the objection."

■ Although we find that the district court erroneously admitted Martin's testimony, reversal is not warranted because the errors had no substantial influence on the outcome, and sufficient evidence supports the jury's verdict. *See Hawkins,* 905 F.2d at 1493. Similarly, as for Christopher's contention that the admission of Martin's testimony violated the sixth amendment, we do not reach this issue because we find that any confrontation clause violation would be "harmless beyond a reasonable doubt" given the overwhelming evidence of John Christopher's guilt. *See Lang,* 904 F.2d at 625–26.

First, Martin testified that "Stephanie" supplied her with crack cocaine, that she sold between $3,000–$8,000 worth of crack cocaine each day, and that she generally gave the money to "Stephanie." Martin further testified (although she later contradicted this testimony) that she said, in a statement given to a law enforcement officer after her arrest, that "Stephanie" and others were selling crack for John Christopher. Second, when officers served the search warrant on the Joy Lane residence, John Christopher attempted to flee, gave a false name when subdued, and stated that he was only a visitor but did not know who he was visiting.

Third, John Christopher subsequently made another attempt to escape (while handcuffed), and after being recaptured said: "If you were looking at the time I'm looking at, you'd run too." Fourth, a search of the home revealed, among other things, a suitcase which contained triple-beam scales, crack cocaine, one to two thousand zip-lock bags, and a heat-sealing machine. Christopher also told Ramey that he would tell him about the suitcase if he would let the other people in the house go. Finally, John Christopher admitted to Russell Ramey that the second bedroom was his and, further, that "the house is mine, all the other people are only visiting."

### D. Allen and Presley

■ Allen and Presley contend that the district court erred when it admitted hearsay testimony elicited from Martin to the effect that she heard that every three or four days Allen and Presley would travel to Florida to purchase kilograms of cocaine and would then bring the cocaine back to Mobile for sale.[5] The government again

---

**5.** Q. Officer Hicks and Officer Sam Houston took a recorded statement from you, didn't they?
A. Uh-huh. (Positive response.)
Q. Do you know when that statement was taken?
A. The night I got arrested, I think it were, they brung it to me.
Q. I asked you about did you ever tell them where the cocaine was coming from.
A. They asked me and I told them.
MR. BYRD:
Your Honor, we would object on the grounds of hearsay.
THE COURT:
Overruled.
MR. ROLISON:
Q. You can answer.
A. Okay. That I had heard it come from Miami, from some guy named Sheffield.
Q. Who was bringing it up here?
A. They say Catherine and Tomeka. Then he asked me did I know the address and everything and I said, no sir.
Q. You don't know a Sheffield in Miami?
A. No, sir, I don't.
Q. That's what you heard where it was coming from?

A. Yes, sir.
   *   *   *   *   *   *
Q. Now, who is Meechie?
A. That's Meechie right there (indicating).
Q. Who is Cat?
A. That's Cat right there (indicating).
Q. And did you tell them, did you tell the police that every three or four days that Meechie and Cat would bring cocaine to Mobile?
A. Every three days—I had heard that, yes, sir.
Q. Well, who had you heard that from?
A. I can't exactly remember who, like, I remember I heard that from. Like I said, that had been in the past, you understand. And that's like somebody we just stand up with conversation, like we was inside Bruce's house when we had a conversation talking about that. And I think this time here Bruce White was around.
Q. So you did say that you had heard that Meechie and Cat every three or four days—
A. Yes, sir. That's the statement when I was talking to Bruce White.
Q. And Bruce White was the fellow that you were selling drugs out of his yard on Esau Street?
A. Yes, sir.

contends that the testimony was admissible as a statement of a co-conspirator. Fed.R. Evid. 801(d)(2)(E).

We hold that the district court erroneously admitted this hearsay testimony. First, Martin could not remember who the declarant was: "I can't exactly remember who, like, I remember I heard that from." Consequently, an inadequate foundation existed for the admission of this evidence. *See Mouzin*, 785 F.2d at 692–93. Second, the district court did not find, and could not have found, that the unknown declarant was a member of the conspiracy, and that the statement was made during the course of and in furtherance of the conspiracy. *See Fernandez*, 797 F.2d at 945–46.

■ Despite this holding, however, we find this evidentiary error to be harmless as to both Presley and Allen. The erroneous admission of Martin's hearsay testimony had no substantial influence on the verdicts, and the government introduced sufficient evidence from which the jury could find both Presley and Allen guilty as charged in the indictment. *See Hawkins*, 905 F.2d at 1493.

With respect to Presley, the government introduced evidence that: (1) Martin met Presley when she first moved to Mobile; (2) Martin testified that after selling cocaine at Bruce White's residence she usually gave the cash to "Stephanie," but that on one occasion Presley picked up cash ($200–$300); (3) Officer McLean testified that he saw Presley at the Red Roof Inn at the time he arrested Sodonnie and Jameson Christopher for the sale of crack cocaine; (4) Presley was in the Joy Lane residence when the search warrant was executed and crack cocaine and drug paraphernalia were seized; and (5) the government's expert fingerprint witness detected Presley's fingerprints on two of the zip-lock bags as well as the seal-a-meal machine, all of which were discovered in the red suitcase.

As to Catherine Allen, Martin testified that Allen gave her money whenever she needed it. Officer McLean testified that he saw Stephanie Nodd (she supplied Martin with crack cocaine and picked upon the cash proceeds) driving Allen's yellow Mer-

cedes Benz. Further, Officer McLean stated that he saw Allen at the Red Roof Inn at the time that Sodonnie and Jameson Christopher were arrested for the sale of cocaine. Allen was also in the Joy Lane residence when the Mobile Police officers executed the search warrant. Finally, Allen's fingerprints were on two of the zip-lock bags found in the red suitcase (which also contained crack cocaine and other drug-related paraphernalia).

### 2. Sufficiency of Evidence

John Christopher, Allen, and Presley challenge their convictions for insufficiency of evidence. "Sufficiency of the evidence is a question of law subject to *de novo* review." *United States v. Poole*, 878 F.2d 1389, 1391 (11th Cir.1989) (per curiam). In determining whether sufficient evidence supports a conviction, we "must view the evidence in the light most favorable to the government, ... and determine whether the jury could have found defendant guilty beyond a reasonable doubt." *Poole*, 878 F.2d at 1391 (citation omitted). Further, "[t]he evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." *Poole*, 878 F.2d at 1391.

In order to prove the conspiracy charged in the indictment, the government had to prove, by direct or circumstantial evidence, (1) the existence of an agreement to possess crack cocaine with intent to distribute, (2) that the defendants knew of its general purpose, and (3) that the defendants voluntarily participated in the conspiracy. *United States v. Howard*, 895 F.2d 722, 724 (11th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 3286, 111 L.Ed.2d 794 (1990). Further, to prove the possession count, the government had to prove (1) knowing possession of (2) crack cocaine with (3) the intent to distribute it. *Howard*, 895 F.2d at 724.

### A. John Christopher

■ Christopher contends that the government offered insufficient evidence to support his convictions for conspiracy to possess with intent to distribute, and possession of crack cocaine with intent to distribute. We find that the government offered sufficient evidence from which a reasonable jury could find John Christopher guilty, beyond a reasonable doubt, of conspiracy and possession of crack cocaine with intent to distribute. *See United States v. Montes–Cardenas*, 746 F.2d 771, 778 (11th Cir.1984). As previously discussed, Martin's testimony linked Christopher to the sale of crack cocaine. Christopher was at the residence on Joy Lane when the police searched the home. Further, he attempted to escape twice, gave a false name, and made highly incriminating statements. Moreover, the police found the red suitcase (and its contents which included crack cocaine and drug-related articles), as well as a briefcase containing $4,970 in cash in John Christopher's bedroom. Finally, contrary to Christopher's assertions, the government offered sufficient evidence, in the form of expert and lay testimony, that the substances involved in the conspiracy and possession offenses were crack cocaine. *See United States v. Harrell*, 737 F.2d 971, 978–79 (11th Cir. 1984), *cert. denied*, 470 U.S. 1027, 105 S.Ct. 1392, 84 L.Ed.2d 781 (1985).

### B. Catherine Allen and Mechiko Presley

■ Similarly, Allen and Presley maintain that the government failed to prove beyond a reasonable doubt that they (a) conspired to possess crack cocaine with intent to distribute, and (b) possessed crack cocaine with intent to distribute. We hold, viewing the evidence in the light most favorable to the government, that the government offered sufficient admissible evidence from which a reasonable jury could find Presley and Allen guilty, beyond a reasonable doubt, of the offenses charged in the indictment. *See Montes–Cardenas*, 746 F.2d at 778. As previously noted, Allen and Presley, among other things, either gave money or picked up money from Martin, who was selling cocaine for John Christopher. Further, both Allen and Presley were at the residence on Joy Lane when the Mobile police officers conducted the search. Moreover, the government's fingerprint expert identified Allen's and Presley's fingerprints on items found in the red suitcase.

### 3. John Christopher and Rule 16

■ John Christopher contends that the district court erred when it failed to grant a mistrial on the basis of the government's alleged failure to comply with Fed.R. Crim.P. 16. Rule 16 requires the government to disclose oral statements made by the defendant which the government intends to introduce at trial:

> Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: ... the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the government to be a government agent.

Fed.R.Crim.P. 16.

Christopher argues that the government offered in evidence various statements, through the testimony of Russell Ramey, without disclosing those statements to Christopher prior to trial. For instance, Christopher points to the following testimony of Ramey: "Mr. Christopher stated to that police officer, 'if you were looking at the time I was looking at, you'd run too.'" On the basis of this, and other statements, which were not disclosed, Christopher argues that the district court should have granted a mistrial. The government contends that the district court properly denied Christopher's motion for a mistrial. We will only reverse the district court for an abuse of discretion. *United States v. Turner*, 871 F.2d 1574, 1580 (11th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 552, 107 L.Ed.2d 548 (1989).

Factors to be considered by the district court when imposing a sanction for failure to comply with rule 16 include: (1) the reasons for the delay in complying with the

discovery order; (2) whether the government acted in bad faith; (3) whether the defendant was prejudiced; and (4) the availability of alternate means to cure the prejudice, including continuances and recesses. *Turner,* 871 F.2d at 1580.

Although we assume that the government failed to comply with the requirements of rule 16, we find that the district court did not abuse its discretion when it denied the motion for mistrial: (1) Christopher failed to articulate prejudice; (2) Christopher has not alleged bad faith; and (3) the district court found that Ramey was made available to Christopher's counsel so that he could have learned Ramey's testimony. *See Turner,* 871 F.2d at 1580.

4. John Christopher's Sentence and Upward Departure

Christopher also argues that the district court (1) erroneously calculated his base offense level to be 34 (based upon 15 kilograms of cocaine as found in the presentence investigation report (PSI)), instead of 18 (based upon 4.82 ounces of cocaine), and (2) improperly departed from the applicable guideline range of 262–327 months when it imposed the statutory maximum sentence of life in prison without parole. The government argues that the district court properly calculated John Christopher's base offense, and that an upward departure was appropriate. The government points to the district court's reason for imposing the sentence: "Justified by reason of his total activities, lack of concern for the life or welfare of others. Evidence showed he was an organizer and leader of a ring of violators—including corrupting his own children."

We will not disturb the district court's findings of fact unless they are clearly erroneous. *United States v. Spraggins,* 868 F.2d 1541, 1543 (11th Cir.1989). "In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial." Sentencing Guidelines, § 6A1.3 (commentary) (November 1, 1989); *see also* 18 U.S.C. § 3661. "Normally, we will not consider an argument raised for the first time on appeal. This rule is also applicable to sentencing proceedings." *United States v.*

*Prichett,* 898 F.2d 130, 131 (11th Cir.1990) (citation omitted).

### A. Base Offense Level

We reject Christopher's challenge to the district court's determination of his base offense level. First, Christopher does not argue on appeal that he objected before the district court to the PSI's determination that 15 kilograms were involved in the offenses. *See Prichett,* 898 F.2d at 131. Indeed, although the record on appeal as provided by Christopher appears to be incomplete (Christopher did not submit a copy of the sentencing hearing transcript), the district court specifically adopted the Probation Department's finding of fact on the basis of Christopher's failure to object to the PSI.

Second, even if Christopher had objected to the relevant portions of the PSI, we would not find the district court's conclusion as to the amount of cocaine involved to be clearly erroneous. *See Spraggins,* 868 F.2d at 1543. We base this finding upon (1) the size of the conspiracy as evidenced (a) by the number of co-conspirators who were either convicted or pleaded guilty, and (b) Martin's testimony regarding the number of people selling cocaine; (2) the amount of crack cocaine seized at the Joy Lane residence; (3) the triple-beam scales, heat-sealing machine and large number of zip-lock bags found in the red suitcase; and (4) Martin's testimony as to the value of the cocaine she sold on a daily basis.

### B. Departure

Title 18 U.S.C. § 3553(b) provides that a district court may impose a sentence outside the range established by the applicable guideline if the district court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *See also* Sentencing Guidelines, § 5K2.0 (November 1, 1989). We will affirm the district court's decision to depart from the Sentencing Guidelines under section 3553(b) if (1) the aggravating circumstances were not ade-

quately taken into consideration by the Sentencing Commission in formulating the Sentencing Guidelines, (2) consideration of those aggravating factors is consistent with the aims of guideline sentencing, and (3) the extent of the departure was reasonable. *See United States v. Shuman,* 902 F.2d 873, 875–76 (11th Cir.1990).

■ Applying this test to the district court's departure from the applicable guideline range, we find the district court's departure to be reasonable and consistent with the aims of guideline sentencing. *See Shuman,* 902 F.2d at 876. Among the factors which warranted an upward departure from the Sentencing Guidelines are John Christopher's extensive criminal history which is not adequately reflected by his criminal history category, and Christopher's apparent willingness to corrupt members of his family, including his own children, by involving them in criminal activities.

5. Sodonnie Christopher's Sentence

■ Sodonnie Christopher contends that he should be resentenced because the district court failed to sentence him under the Sentencing Guidelines. Further, at oral argument, Christopher argued that the district court erred when it sentenced him on the basis that his offense involved 15 kilograms of cocaine.

At the time Sodonnie Christopher entered his plea of guilty, the District Court for the Southern District of Alabama had held the Sentencing Guidelines unconstitutional. *United States v. Diaz,* 685 F.Supp. 1213 (S.D.Ala.1988). Subsequently, the United States Supreme Court declared the Sentencing Guidelines to be constitutional. *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Consequently, Christopher maintains that this case should be remanded to the district court for resentencing under the Sentencing Guidelines.

The government responds that a remand is unnecessary because it is clear from the record that the district court sentenced Christopher under the Sentencing Guidelines, and within the applicable guideline range. Specifically, the government relies upon the following statement by the district court: "I am going to depart from the plea bargain and I'm going to impose that which the guidelines would have required in this instance."

In addition to *prescribing* sentencing ranges for particular offenses, the Sentencing Guidelines establish certain procedures which must be followed. For instance, a PSI ordinarily must be prepared by a United States probation officer, the defendant must be given the opportunity to object to factual findings made by the probation officer in the PSI, and the district court is required to resolve factual objections and legal issues and make "explicit findings of fact and conclusions of law" to facilitate judicial review. *United States v. Wise,* 881 F.2d 970, 973 (11th Cir.1989); *see also* 18 U.S.C. §§ 3552, 3553; Sentencing Guidelines, §§ 6A1.1–6A1.3 (November 1, 1989); Fed.R.Crim.P. 32. "[E]vidence presented at the trial of another may not—*without more*—be used to fashion a defendant's sentence if the defendant objects. In such a case, where the defendant has not had the opportunity to rebut the evidence or generally to cast doubt upon its reliability, he must be afforded the opportunity." *United States v. Castellanos,* 904 F.2d 1490, 1496 (11th Cir.1990) (emphasis in original).

In this case, a probation officer prepared a PSI, and Sodonnie Christopher raised various objections including, among others, a challenge to the PSI's finding that the offense involved 15 kilograms of cocaine. The district court subsequently held a sentencing hearing and entertained argument on disputed questions of fact. At the close of the sentencing hearing, the district court sentenced Christopher without making a factual finding as to the amount of cocaine involved, and no explicit findings as to disputed factual questions appear in the district court's "Report of Statement of Reasons for Imposing Sentence."

Although the district court accorded Christopher many of the procedural safeguards required under guideline sentencing, we remand this case for resentencing. First, as previously discussed, no findings

 

of fact regarding the amount of cocaine involved exist in the record on appeal. *See Wise,* 881 F.2d at 973. Second, assuming that the district court found that 15 kilograms were involved (as suggested by the district court's comments during the sentencing hearing), we find that conclusion to be clearly erroneous based upon the evidence offered at the sentencing hearing. *See Spraggins,* 868 F.2d at 1543. The PSI only contains a conclusory statement that 15 kilograms were involved, and no evidence was introduced at Sodonnie Christopher's sentencing hearing regarding the amount of cocaine involved. Further, to the extent that a 15 kilogram finding was based, as Sodonnie Christopher argued at oral argument, solely upon testimony offered at John Christopher's, Allen's and Presley's trial (e.g. Martin's testimony), this evidence cannot be used, without more, to fashion Sodonnie Christopher's sentence in light of his objection. *See Castellanos,* 904 F.2d at 1496. Consequently, we affirm Sodonnie Christopher's conviction, but vacate and remand to the district court for the limited purpose of conducting a sentencing hearing, making findings of fact regarding the amount of cocaine involved in the conspiracy, and resentencing.

Finally, Christopher contends that upon remand, he should be afforded the opportunity to withdraw his guilty plea. Christopher argues that he pleaded guilty in exchange for the government's recommendation that he only be sentenced to 72 months in prison. A defendant who seeks to withdraw a guilty plea after sentence bears a heavy burden of "proving the necessity of such action to correct manifest injustice." *See United States v. Teller,* 762 F.2d 569, 574 (7th Cir.1985). In this case, the district court specifically informed Christopher when accepting his guilty plea that it was not bound by the plea bargain "and was free to impose whatever penalty [it] thought was appropriate in the case up to the maximum which was life." Under these circumstances, we can discern no "manifest injustice." *See Teller,* 762 F.2d 574. Consequently, we hold that Sodonnie Christopher is not entitled to withdraw his guilty plea.

## CONCLUSION

In sum, we find (1) the district court's erroneous admission of Martin's hearsay testimony to be harmless error, (2) that sufficient admissible evidence supports John Christopher's, Allen's and Presley's convictions, (3) that the district court did not abuse its discretion when it denied John Christopher's motion for a mistrial, and (4) that the district court properly sentenced John Christopher under the Sentencing Guidelines. Accordingly, we affirm Allen's, Presley's, and John Christopher's convictions and sentences. Further, we affirm Sodonnie Christopher's conviction, but remand the case for the limited purpose of conducting a sentencing hearing, making findings of fact regarding the amount of cocaine involved in the conspiracy, and resentencing.

AFFIRMED in part and REMANDED for resentencing.