**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Elwyn Jerome CHISHOLM a/k/a Gary, and Clarence Aaron, a/k/a Snoop, Defendants–Appellants.**

No. 93–7083.

United States Court of Appeals, Eleventh Circuit.

Jan. 22, 1996.

Before DUBINA and CARNES, Circuit Judges, and MILLS *, District Judge.

DUBINA, Circuit Judge:

Appellants Elwyn Jerome Chisholm ("Chisholm") and Clarence Aaron ("Aaron") challenge their convictions and sentences for drug trafficking. Both appellants raise numerous contentions on appeal. We find no error with respect to the appellants' convictions, and we find that only two sentencing issues require discussion.

## I. FACTUAL BACKGROUND

The details of the conspiracy underlying Chisholm and Aaron's convictions were described at trial by their co-conspirator, Marion Teano Watts ("Watts"), who pled guilty to a cocaine base ("crack cocaine") charge. Watts was a crack cocaine distributor who operated in Mobile, Alabama in 1991 and 1992. As a distributor, he purchased powder cocaine by the kilogram, converted it into crack cocaine, and distributed it. In 1992, Watts lost his source for powder cocaine. It was Watts' search for a new source of powder cocaine that initially led to Chisholm and Aaron's involvement in the two separate drug transactions upon which their sentences are based.

The first drug transaction involved the purchase of nine kilograms of powder cocaine. Robert Hines ("Hines"), an associate of Watts, contacted Aaron about the deal. Aaron in turn contacted Chisholm. After calling a cocaine source in Houston, Chisholm informed Aaron and Hines that they would be able to purchase ten kilograms of powder cocaine for $200,000. Watts provided the money, which Aaron and Hines used to purchase nine kilograms of powder cocaine from Chisholm's source. Aaron, Hines, and Watts then drove to the house where Watts usually "cooked" powder cocaine into crack cocaine. On the way, Watts stopped at a grocery store to buy plastic bags and baking soda for cooking the cocaine. The nine kilograms of pow-

Richard J. Gallot, Jr., Ruston, LA, for Elwyn Jerome Chisholm.

Clark, Deen & Copeland, P.C., Robert F. Clark, W. Lloyd Copeland, Mobile, AL, for Clarence Aaron.

Deborah A. Griffin, Asst. U.S. Atty., Mobile, AL, for the U.S.

---

* Honorable Richard Mills, U.S. District Judge for the Central District of Illinois, sitting by designa- tion.

der cocaine were converted into crack cocaine and sold.

The second drug transaction involved the attempted purchase of 15 kilograms of powder cocaine. Approximately one week after the first transaction, Watts requested an additional 15 kilograms of powder cocaine from Hines. When Hines did not get back in touch with Watts after a couple of days, Watts contacted Aaron directly. Aaron again contacted Chisholm. Watts gave Aaron and Hines $250,000, and Aaron and Hines met Chisholm at the Galleria Hotel in Houston, Texas. While there, Chisholm and Hines were robbed by two gunmen who, according to Hines, stole the $250,000. Because the money was stolen, Chisholm and Hines were unable to purchase the 15 kilograms of powder cocaine.

## II. PROCEDURAL HISTORY

Chisholm and Aaron were indicted in the Southern District of Alabama. Count I charged them with conspiracy to possess a controlled substance with the intent to distribute, in violation of 21 U.S.C. § 846. Count II charged them with possession with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). Count III charged them with attempt to possess a controlled substance with the intent to distribute, in violation of 21 U.S.C. § 846. Finally, Count IV charged them with criminal forfeiture, pursuant to 21 U.S.C. § 853. After a jury trial, both Chisholm and Aaron were convicted of Counts I, II, and III. Pursuant to the United States Sentencing Guidelines ("U.S.S.G."), Chisholm and Aaron were each sentenced to life without parole.

In sentencing Chisholm and Aaron, the district court found that "[t]he evidence overwhelmingly supports the fact [that Chisholm and Aaron] possessed powder cocaine with the intent of producing crack cocaine" and that Chisholm and Aaron were "involved with at least 20 kilograms of [powder] cocaine to be converted to crack cocaine." R1 at 101; R2 at 102. Accordingly, the district court found that Chisholm and Aaron each had a base offense level of 42 under U.S.S.G. § 2D1.1(c)(1). *Id.* The district court made

no findings of fact concerning the amount of crack cocaine that would result from the conversion of the powder cocaine. Instead, the district court assumed that powder cocaine converted into crack cocaine at a ratio of one-to-one.

## III. ISSUES

On appeal, Chisholm raises the following issues:

(1) whether the conversion of powder cocaine into crack cocaine was foreseeable by Chisholm and within the scope of Chisholm's agreement;

(2) whether Chisholm intended to transfer cocaine during the second transaction;

(3) whether the imposition of an aggravating role adjustment was error;

(4) whether the determination that Chisholm obstructed justice was error;

(5) whether the admission into evidence of Federal Rule of Evidence 404(b) material was error; and

(6) whether the evidence was sufficient to convict Chisholm of the charges contained in the indictment.

On appeal, Aaron raises the following issues:

(1) whether the evidence justified the district court's jury instruction on deliberate ignorance;

(2) whether the district court erroneously instructed the jury on deliberate ignorance as applied to the conspiracy charged in the indictment;

(3) whether the district court's deliberate ignorance instruction, when coupled with the instruction on the vicarious liability of a conspirator for substantive crimes committed by co-conspirators, deprived Aaron of a fundamentally fair trial and constituted plain error; and

(4) whether the district court's finding that Aaron knew the powder cocaine was to be converted into crack cocaine was error.

## IV. DISCUSSION

After a careful review of the record, we summarily affirm Chisholm and Aaron's convictions.[1] We also summarily reject appellants' arguments regarding their sentences, except for the question of whether the conversion of powder cocaine into crack cocaine was within the scope of Chisholm's agreement. Additionally, we feel compelled to address the district court's unsupported assumption that powder cocaine converts into an equal amount of crack cocaine.

### A. The Equation of One Kilogram of Powder Cocaine to One Kilogram of Crack Cocaine.

■ The district court sentenced Chisholm and Aaron according to the crack cocaine schedule reported at U.S.S.G. § 2D1.1(c)(1). As no evidence was presented at trial regarding a conversion formula, the district court simply assumed that powder cocaine converts to crack cocaine at a one-to-one ratio to determine the quantity of drugs involved in the conspiracy. We review the district court's determination of the quantity of drugs involved in a conspiracy for the purpose of sentencing under the clearly erroneous standard. *See United States v. Davis,* 902 F.2d 860, 861 (11th Cir.1990).

The appellants did not challenge the district court's unsubstantiated equation of one kilogram of powder cocaine to one kilogram of crack cocaine in the district court or here on appeal. Failure to raise this issue in the sentencing court would normally preclude us from reviewing the district court's action. However, if we conclude that the district court's action amounts to "plain error," we may waive the appellants' procedural default and address the issue on the merits. *See* Fed.R.Crim.P. 52(b); *United States v. Weir,* 51 F.3d 1031, 1032 (11th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 928, —— L.Ed.2d —— (1996) ("[A] party's failure to object to the sentencing court's finding of fact and conclusions of law waives any objection for appeal purposes, unless this would result in manifest injustice."). Thus, the question before us is whether it was plain

error for the district court to assume that the purchase of 23 kilograms of powder cocaine intended to be processed into and sold as crack cocaine could be treated as an offense involving 23 kilograms of crack cocaine in the absence of any evidence establishing that powder cocaine converts to crack cocaine on a one-to-one ratio.

■ To satisfy the plain error standard, this court must find that: (1) there was error in the district court's determination; (2) the error was plain or obvious; and (3) the error "affected substantial rights" in that the error was prejudicial and not harmless. *United States v. Ramsdale,* 61 F.3d 825, 832 (11th Cir.1995) (citing *United States v. Olano,* 507 U.S. 725, 730–32, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993)). If these criteria are met, this court may, in its discretion, correct the plain error if it " 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *Olano,* 507 U.S. at 732, 736, 113 S.Ct. at 1776, 1779 (citation omitted); *see also United States v. Vazquez,* 53 F.3d 1216, 1221 (11th Cir.1995).

■ The Sentencing Guidelines do not treat powder cocaine and crack cocaine as though they are the same substance. For example, under U.S.S.G. § 2D1.1(c)(5), 23 kilograms of powder cocaine provides a base offense level of 34. In contrast, under U.S.S.G. § 2D1.1(c)(1), 23 kilograms of crack cocaine provides a base offense level of 42. The stark difference in the offense levels assigned by the Guidelines for crimes involving the same quantity of powder cocaine and crack cocaine reveals not only the mistake inherent in an unsubstantiated assumption of a one-to-one conversion ratio, but also the certainty that this clearly erroneous assumption will result in prejudice to the substantial rights of defendants. Where, as here, the Sentencing Guidelines contain dramatically different sentencing schedules depending on the form of the substance involved, and where the government seeks to have the defendant sentenced under the harsher schedule, the disparity in the range of sentences alone is sufficient to put the district court on notice that evidence of a conversion

---

**1.** *See* 11th Cir.R. 36–1.

ratio must be considered before any such ratio is applied.[2] Thus, it was plain error for the district court to equate powder cocaine and crack cocaine absent any evidence establishing a conversion ratio. Furthermore, we feel compelled to correct this type of plain error because it seriously implicates the fairness and integrity of sentencing under the Guidelines.

Accordingly, upon remand the district court should determine, based upon some evidence, the amount of crack cocaine that would be produced from the amount of powder cocaine involved here and then use that figure in calculating Aaron's sentence under the crack cocaine schedule.[3] If the district court is unable to make that determination, then it should resentence Aaron according to the powder cocaine schedule. *See United States v. Crayton,* No. 92–9399, 5 F.3d 1497 (11th Cir. Sept. 29, 1993); *United States v. Powe,* No. 92–6667, 19 F.3d 36 (March 7, 1994).[4]

B. The Conversion of Powder Cocaine to Crack Cocaine as Within the Scope of Chisholm's Agreement.

■ Chisholm asserts that the district court erred in sentencing him according to the schedule for crack cocaine because the conversion of the powder cocaine into crack cocaine was not foreseeable and was outside the scope of the criminal activity in which he agreed to participate. We agree.

Chisholm did not participate in the conversion of the powder cocaine to crack cocaine or in the sale of the crack cocaine. However, Section 1B1.3(a) of the Sentencing Guidelines delineates co-conspirator acts for which a defendant is to be held accountable in cases of jointly undertaken criminal activity. On November 1, 1992, a clarifying amendment to Section 1B1.3 became effective. That amendment applies to Chisholm because he was sentenced in December 1993. *See* 18 U.S.C. § 3553(a)(4)(A) (applicable Sentencing Guidelines are those "that are in effect on the date the defendant is sentenced"). In a recent interpretation of the amended U.S.S.G. § 1B1.3 and its commentary, this circuit held that "defendants are only accountable for [co-conspirator] conduct that was reasonably foreseeable and within the scope of the criminal activity that the defendant agreed to undertake." *United States v. Reese,* 67 F.3d 902, 906–08 (11th Cir.1995). Thus, even though a conspirator may reasonably foresee other criminal acts, he is not accountable for those acts if they were not part of the scope of the criminal activity he agreed to undertake. *Id.* at 907.

In the present case, there is no evidence that the conversion to or use of crack cocaine was reasonably foreseeable by Chisholm, or that it was part of the scope of criminal activity that he agreed to undertake. In both drug transactions for which Chisholm is charged, the evidence shows that Chisholm merely assisted with the procurement of powder cocaine. With respect to the first transaction, involving nine kilograms of powder cocaine, Chisholm arranged the buy for Aaron and Hines. At trial, Hines admitted dealing drugs and selling crack cocaine for Watts, and Watts admitted that he was a major crack cocaine dealer. However, Chisholm communicated only with Aaron regarding the organization of the purchase of the nine kilograms of powder cocaine. There is no evidence that Chisholm had contact with Watts. Moreover, beyond organizing the purchase, Chisholm was removed from the actual exchange of money and powder cocaine.

With respect to the second transaction, involving the purchase of 15 kilograms of powder cocaine, Chisholm met with Aaron and Hines in Houston, Texas to receive deliv-

---

2. If a district court has more direct evidence of the actual amount of crack cocaine involved in a given conspiratorial effort, then it could, of course, sentence from the crack cocaine schedule without inquiring into the cocaine powder-to-crack ratio.

3. As discussed infra, the district court must resentence Chisholm according to the powder co-

caine schedule, regardless of whether it is able to determine an appropriate conversion formula.

4. The Eleventh Circuit provides by rule that unpublished opinions are not binding precedent. However, they may be cited as persuasive authority. 11th Cir.R. 36–2; *see United States v. Mitchell,* 894 F.2d 411 (11th Cir.1990).

ery. The group was eventually robbed of the money intended to purchase the 15 kilograms of powder cocaine, and no cocaine was purchased. Chisholm had no direct contact with Watts prior to the robbery. Although Chisholm did speak to Watts subsequent to the robbery, the evidence shows that it was only to convey his innocence regarding the robbery. In addition, there is no evidence in the record tending to show that Chisholm knew of or agreed to the planned conversion of powder cocaine into crack cocaine from his limited contact with Hines. Thus, the district court erred in concluding that the conversion of the powder cocaine into crack cocaine and/or the sale of crack cocaine was an act attributable to Chisholm, and it was error for the district court to sentence Chisholm according to the crack cocaine schedule.

### V. CONCLUSION

For the foregoing reasons, we affirm the convictions of Chisholm and Aaron. However, we vacate the sentences of Chisholm and Aaron and remand this case to the district court with instructions to resentence them in a manner consistent with this opinion.

AFFIRMED in part, VACATED in part, and REMANDED.