United States Court of Appeals,

Eleventh Circuit.

No. 95-6960.

UNITED STATES of America, Plaintiff-Appellee,

v.

Roy Mack WEST, a.k.a. Teeny Man, etc., Defendant-Appellant.

June 11, 1998.

Appeal from the United States District Court for the Northern District of Alabama. (No. CR-95-AR-91-S), William M. Acker, Judge.

Before HATCHETT, Chief Judge, and GODBOLD and RONEY, Senior Circuit Judges.

HATCHETT, Chief Judge:

A jury in the Northern District of Alabama convicted appellant Roy West for engaging in a continuing criminal enterprise. He appeals the district court's denial of his motion to dismiss the indictment based on the Speedy Trial Act and the district court's admission of certain evidence. We affirm.

## I. BACKGROUND

In the fall of 1984, the Federal Bureau of Investigation (FBI) in Trenton, Georgia, initiated an undercover drug operation directed at appellant Roy West (West), his brother Sam West (Sam), and their associates. An undercover informant succeeded in making purchases of marijuana and cocaine that West directed. In early 1986, the Northern District of Georgia issued a parole violation warrant, and West became a fugitive. During that year, West traveled with various individuals, including James Brennan, Elizabeth Meadows, Louis Barker, Claude Wayne Cole, Lloyd David Shipley and Robert Douglas Williams. Other members of the organization included West's nephew, Mark West (Mark); West's sister, Patsy West Whited; Steve Wofford; and George Robert Booth.

From early 1988 through mid-August 1989, West hired Brennan and other individuals to purchase or lease property in New Mexico for growing and cultivating marijuana. Brennan purchased three parcels of land, and each became a "ranch." Barker, Cole and Brennan supervised the workers cultivating the fields. West and Mark oversaw the supervisors.

In August 1989, federal and state agents conducted raids on two of the ranches in New Mexico and succeeded in recovering: (1) more than 1,000 marijuana plants; (2) chemicals and glassware used to manufacture methamphetamine; (3) numerous documents and records, including false tax forms; (4) false identifications; and (5) bills of sale for realty and personalty that West and Mark had purchased. The agents arrested Barker and several of the workers during the raids.

At about the same time, West directed Booth, and supplied him money, to purchase additional property in Eskridge, Kansas, to grow marijuana. West also purchased large amounts of methamphetamine and directed that Booth sell or deliver it from Topeka, Kansas, to Birmingham, Alabama, and to other members of the organization. On two occasions, Booth delivered thirteen pounds of methamphetamine to Wofford in Nashville, Tennessee, and twenty-two pounds of methamphetamine to Mark, for $60,000. In November 1989, Booth introduced West to Harold Hall in Chattanooga, Tennessee, from whom West purchased between twenty and twenty-five kilograms of cocaine for $400,000.

A second phase of the West drug organization began in 1991 and continued through the summer of 1993. Shipley purchased between 6,000 and 7,000 pounds of marijuana from Mexican suppliers and delivered it to West in exchange for more than $5,000,000. Shipley transported the marijuana to Bessemer, Alabama, and delivered it to the house and automobile business of Williams. Mark and other individuals unloaded the marijuana from the trucks, while a group including Meadows counted the money. This operation ended with Mark's arrest in October 1993, while he

was moving into a house in Pelham, Alabama, with Jack Barry, Jr.

During a search of the house in Pelham, United States Custom Agent Mike Kennedy found a black notebook contained in a gym bag in an unoccupied bedroom. Barry informed the agents that the items in the house belonged to him or Mark. FBI Special Agent Dan Clouse identified the notebook at trial as a ledger containing records of a drug distribution business that was in operation in 1992 and 1993 and that included the sale of almost 6,000 pounds of marijuana with a purchase price in excess of $5,000,000 and a sale price of approximately $6,000,000. The agents also executed search warrants at Williams's place of business.

The final phase of West's drug enterprise began in 1994. Tracy Wagner, a federal prison escapee, rented a warehouse with Shipley to manufacture large amounts of methamphetamine. West loaned Shipley more than $300,000 to purchase the necessary equipment and chemicals. Based on information from Meadows, law enforcement officers raided the warehouse in February 1995, and discovered two huge cookers, glassware consistent with the manufacturing of methamphetamine, and various chemicals.[1]

On February 4, 1995, law enforcement officials in Hernando, Mississippi, arrested West, and on April 5, 1995, a federal grand jury for the Northern District of Alabama charged West with engaging in a continuing criminal enterprise (CCE), in violation of 21 U.S.C. § 848 (Count One or the CCE count) and conspiracy to possess with the intent to distribute and distribution of marijuana, cocaine and methamphetamine, in violation of 21 U.S.C. § 846 (Count Two).[2] The government filed

---

[1]The government asserts that West and his coconspirators also purchased numerous parcels of property, automobiles and motorcycles throughout the course of the conspiracy in the names of the coconspirators or using fictitious names to conceal the identity of the true owner of the property.

[2]The grand jury first indicted West on June 10, 1993, returned a superseding indictment on August 10, 1994, and finally returned a second superseding indictment on February 9, 1995.

a motion for continuance on May 4, 1995, and West filed a waiver of his rights to the time limitations under the Speedy Trial Act, 18 U.S.C. § 3161(c)(1) on May 26, 1995. On June 1, 1995, the court granted the motion for continuance and scheduled the trial to begin on August 7, 1995.

On June 7, 1995, the grand jury returned a superseding indictment that added an additional defendant to Count Two. On July 13, 1995, the grand jury returned a second superseding indictment, "which changed the time period for the offenses and specifically alleged in Count Two the methods and means used in the conspiracy, as well as overt acts in furtherance of the conspiracy." The trial began as scheduled, and the jury returned a guilty verdict against West on both counts. The court sentenced West to life imprisonment for his conviction under Count One and vacated the conviction under Count Two pursuant to *United States v. Nixon,* 918 F.2d 895 (11th Cir.1990).

## II. ISSUES

The issues we discuss are (1) whether the district court erred when it failed to dismiss West's indictment under the Speedy Trial Act; and (2) whether the court (a) abused its discretion in admitting the notebook discovered at the house in Pelham, Alabama, that memorialized drug transactions; and (b) erred when it instructed the jury about the notebook.[3]

## III. DISCUSSION

A. SPEEDY TRIAL

---

West, after his February 4, 1995 arrest, appeared February 9, 1995.

[3]West also raises several other issues: (1) whether the court should have dismissed his indictment based on a violation of the statute of limitations; (2) whether the court should have dismissed his indictment because the indictment alleged a single conspiracy instead of multiple conspiracies; (3) whether the court erred in denying West's motion for mistrial; (4) whether the court erred in admitting the testimony of Geving, or in failing to issue a limiting instruction; (5) whether the court erred in denying West's motion for judgment of acquittal; (6) whether the court erred in its jury instructions; and (7) whether the court erred in imposing a mandatory life sentence. We affirm on these issues without discussion pursuant to Eleventh Cir. R. 36-1.

This court reviews claims under the Speedy Trial Act (Act) *de novo. United States v. Twitty,* 107 F.3d 1482, 1488 (11th Cir.), *cert. denied,* --- U.S. ----, 118 S.Ct. 253, 139 L.Ed.2d 181 (1997). The Act provides that when a defendant enters a plea of not guilty, "the trial ... shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date is later." 18 U.S.C. § 3161(c)(1). The Act also provides numerous instances of excludable time periods from this seventy-day calculation. *See* 18 U.S.C. § 3161(h). West claims that 177 unexcluded days elapsed between his first appearance and his trial and, therefore, the court erred in not dismissing his indictment.

The grand jury in the Northern District of Alabama first indicted West on June 10, 1993, and he did not appear in court concerning this indictment until February 9, 1995. This first appearance triggered the running of his speedy trial clock. *See* 18 U.S.C. § 3161(c) (1998). On April 4, 1995, the government moved to dismiss West's indictment, after a drug task force grand jury returned a new, "replacement" indictment against him. The court granted this motion, and the grand jury indicted West again on April 5, 1995. According to the Act and case law in this circuit, the government's dismissal of West's original indictment, and the subsequent ("replacement") indictment, triggered a new seventy-day time period. *See* 18 U.S.C. § 3161(d)(1); *see also United States v. Puett,* 735 F.2d 1331, 1333-34 (11th Cir.1984) (stating, "[t]he better construction of section 3161(d)(1) is that after the dismissal of the complaint [by the government], the Act's time limit runs anew from the date of filing of the subsequent complaint or indictment"). The grand jury indicted West one day after the government dismissed the original indictment, and therefore, West's speedy trial clock restarted with the April 5, 1995 indictment.

On May 4, 1995, the government filed a motion to continue West's trial, anticipating that the

June 1995 session of the drug task force grand jury would return a superseding indictment against West. On May 26, 1995, West, and his lawyer, executed a waiver of his speedy trial rights, through August 7, 1995. The court granted the government's motion to continue on June 1, 1995, basing its decision in part on the waivers that the defendants filed and their lack of objections to the continuance. At trial, 124 days after the grand jury issued its "replacement indictment," West moved to adopt several motions of codefendant Wofford, including a motion to dismiss the indictment based on speedy trial violations. The court granted West's motion to adopt, but denied all of the underlying motions.

West attacks his waiver, claiming it could not have been "knowing and intelligent" because he and his lawyer executed it beyond his speedy trial limits, and the potential punishment of life incarceration. West and his lawyer, however, executed this waiver well within the limits of the Act (50 days had elapsed since the April 5, 1995 "replacement" indictment), and he has not presented any other evidence demonstrating that this was not a "knowing and intelligent" waiver.

West also claims that the court erred in granting the government's motion to continue, because it failed to make a specific "ends of justice" finding pursuant to 18 U.S.C. § 3161(h)(8).[4] We review a court's decision to grant or deny a continuance under the Act for abuse of discretion.

---

[4]Title 18 U.S.C. § 3161(h)(8) reads:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

*United States v. Goetz,* 826 F.2d 1025, 1027 (11th Cir.1987).

The court granted the continuance based in part on the waivers that the defendants filed and their failure to object to the continuance. Further, the grounds listed in the government's motion to continue included: (1) that the grand jury was prepared to issue a superseding indictment; (2) that the government needed more time to compile discovery material; and (3) that the defendants would need additional time to file any necessary motions when they received the discovery materials. While the court's order did not specifically state that the decision was based on the "ends of justice," we find, after a review of the record and the findings enunciated in its order, that the court did not abuse its discretion and that the continuance served the "ends of justice." *See Twitty,* 107 F.3d at 1489-90; *United States v. McKay,* 30 F.3d 1418, 1420 (11th Cir.1994), *cert. denied,* 516 U.S. 924, 116 S.Ct. 323, 133 L.Ed.2d 224 (1995); *United States v. Vasser,* 916 F.2d 624, 627 (11th Cir.1990), *cert. denied,* 500 U.S. 907, 111 S.Ct. 1688, 114 L.Ed.2d 82 (1991).

We therefore find that West validly waived his speedy trial rights, and the court relied on it and other factors in rescheduling a trial to a date beyond the expiration of the seventy-day period.

B. NOTEBOOK

West contends that the court erred in admitting the notebook that Agent Kennedy seized at the house in Pelham, Alabama, in October 1993. The government introduced the notebook into evidence as a coconspirator's statement. Agent Clouse testified at trial as an expert concerning this notebook, concluding that the numerical figures and symbols it contained proved its use as a ledger for drug transactions. West objected to the admission of the notebook, contending that it was hearsay and the court had failed to determine the identity of the author of the notebook, which Federal Rule of Evidence 801(d)(2)(E) requires. We review the admission of the notebook for abuse of discretion, and the court's factual findings that the requirements of rule 801(d)(2)(E) were met

under the clearly erroneous standard. *See United States v. Smith,* 918 F.2d 1501, 1510 (11th Cir.1990) (abuse of discretion), *cert. denied,* 502 U.S. 849, 112 S.Ct. 151, 116 L.Ed.2d 117 (1991); *United States v. Alexander,* 850 F.2d 1500, 1505 (11th Cir.1988)(clearly erroneous), *vacated on other grounds,* 492 U.S. 915, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989), *reinstated as amended,* 888 F.2d 777 (11th Cir.1989), *cert. denied,* 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 643 (1990).

Federal Rule of Evidence 801(d)(2)(E) provides that an out-of-court statement of a coconspirator made during the course and in furtherance of the conspiracy is not hearsay, and thus can be offered for the truth of the matter asserted. "When determining whether a coconspirator's statement is admissible ... a court must be satisfied that there was a conspiracy involving the declarant and the defendant against whom the statement is offered, and that the statement was made during the course of and in furtherance of the conspiracy." *United States v. Allison,* 908 F.2d 1531, 1533 (11th Cir.1990) (citing *Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 2778-79, 97 L.Ed.2d 144 (1987)), *cert. denied,* 500 U.S. 904, 111 S.Ct. 1681, 114 L.Ed.2d 76 (1991). A determination (1) that a conspiracy existed; (2) that the declarant and the defendant against whom the statement is offered were members of the conspiracy; and (3) that the declarant made the statement during the course of and in furtherance of the conspiracy are preliminary questions of fact that the court must determine before a coconspirator's statement can be admitted. *See United States v. Christopher,* 923 F.2d 1545, 1549-50 (11th Cir.1991).

The government argued, and the court believed, that sufficient circumstantial evidence existed, such as the dates reflected in the notebook that coincided with the conspiracy's time frame, to justify the jury's ability to make a logical inference that a coconspirator (Mark West) authored the notebook. The court, however, clearly erred when it failed to make the preliminary factual determinations that rule 801(d)(2)(E) and the case law from this circuit require. The court never

identified the author, or declarant, of the notebook, and was thereby unable to determine if its author was a member of the conspiracy and if the entries in the notebook were in furtherance of the conspiracy. The admission of the notebook, therefore, was an abuse of the court's discretion.

At the end of trial, and when issuing jury instructions, the court erred when it instructed the jury that it could determine whether a coconspirator authored the notebook. *Christopher,* 923 F.2d at 1549-50.[5] Because West failed to object to the court's instructions, however, we must review for plain error. *See United States v. Chisholm,* 73 F.3d 304, 307 (11th Cir.1996) (citing Fed.R.Crim.P. 52(b)).

To satisfy the plain error standard, this court must find that: (1) the district court committed error in its determination; (2) the error was plain or obvious; and (3) the error affected substantial rights in that the error was prejudicial and not harmless. *See Chisholm,* 73 F.3d at 307 (citing *United States v. Ramsdale,* 61 F.3d 825, 832 (11th Cir.1995)). Additionally, if the error meets these three conditions, an appellate court should not exercise its discretion to correct the forfeited error unless the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."

---

[5]The court issued the following instruction:

> When I allowed into evidence the notebook, which was the subject of testimony by the FBI agent, and which was obtained in the search of the premises which, according to Mr. Berry, he and Mark West were about to move into, that notebook, I allowed it in because I thought you could, if you would, if you wanted to, and it's up to you, not me, if you wanted to, conclude that the notebook was made by a coconspirator. Whether named or unnamed, whether known or unknown, then it could be evidence upon which you could consider and determine the guilt of this defendant. But you see, I didn't decide that it was or was not the work of one of the alleged coconspirators. It's for you to decide ... In order for you to use that notebook as evidence against the defendant, you must first find that it was the work of and was prepared by (a) one or more—not (a), but one or more coconspirators so that would be the only avenue for it to have been received. So you've got it, but you can't consider it unless you first decide that it was the work and product of some coconspirator or some coconspirators.

*United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 1776-77, 123 L.Ed.2d 508 (1993) (internal citations omitted).

The court's instructions violate the plain error standard's first two criteria. The court erroneously instructed the jury that it should decide whether a coconspirator authored the notebook, and the "plainness" of this error is apparent on review because the instruction was in contravention of rule 801(d)(2)(E) and case law in this circuit. *See United States v. Kramer,* 73 F.3d 1067, 1074 n. 16 (11th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 516, 136 L.Ed.2d 405 (1996); *Christopher,* 923 F.2d at 1549-50; *Allison,* 908 F.2d at 1533-34. The more difficult determination, however, is whether the error affected substantial rights—that is, whether it was prejudicial and not harmless.

West contends that the admission of the notebook and the subsequent instruction supplied the jury with two of the elements required to prove the CCE charge: the related drug violations element (related violations); and the substantial income element. *See* 21 U.S.C. § 848.[6] He further argues that the figures in the notebook supplied the overt acts needed to satisfy the related violations element.[7] The government contends that the testimony of several witnesses independently proved West's engaging in the CCE.

The government presented overwhelming evidence, through the testimony of several key

---

[6]The court instructed the jury that the elements of the CCE charge were: (1) a felony violation of the federal narcotics law; (2) as part of a continuing series of violations; (3) in concert with five or more persons; (4) for whom the defendant is an organizer or supervisor; and (5) from which he derives substantial income or resources.

[7]The court required that the government prove three overt acts concerning a drug felony in order to satisfy the related violations element. West asserts that eleven of the drug felony overt acts were based on entries from the notebook, including the illustrations of Agent Clouse based on the notebook. West additionally contends that the only evidence concerning felony drug overt acts that was not associated with the notebook occurred before the time period in question, and was therefore time barred. The court rejects these contentions based on the overwhelming evidence of drug felony overt acts the government's witnesses produced.

witnesses, that allowed the jury to find that West committed sufficient overt acts to find that he engaged in the charged CCE. Witness Booth testified that he met with West several times between 1989 and 1990 to discuss the production and transportation of methamphetamine, and the growing of marijuana in Eskridge, Kansas. Witness Meadows testified that she accompanied West often when he arranged transportation for large quantities of marijuana and methamphetamine between 1988 and 1993, and that they also collected money at these deliveries. Witness Brennan testified how he managed one of West's marijuana ranches in New Mexico, and additionally testified about West's authority over several more ranches in New Mexico between 1988 and 1989. Witness Shipley testified that he supplied West with large quantities of methamphetamine, marijuana and cocaine between 1989 and 1993.

Accepting as we must the credibility of these witnesses, we find that their testimony provided firm support for West's conviction on the CCE charge. Moreover, we hold that in light of the overwhelming evidence of West's guilt, the court's instruction to the jury, while plainly erroneous, did not affect West's substantial rights such that it was prejudicial and not harmless. We therefore need not concern ourselves with whether the court's instructions seriously affected the fairness, integrity, or public reputation of the judicial proceedings. For these same reasons, we hold that the admission of the notebook, while erroneous, was also harmless. *See United States v. Stitzer,* 785 F.2d 1506, 1517 (11th Cir.), *cert. denied,* 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 44 (1986).

## IV. CONCLUSION

For the foregoing reasons, we conclude that the district court did not err when it denied West's motion to dismiss his indictment based on the Speedy Trial Act, and that the district court committed harmless error in admitting the notebook as a coconspirator's statement and its subsequent instruction to the jury on that subject. Accordingly, we affirm the judgment of the

district court.

AFFIRMED.

RONEY, Senior Circuit Judge, specially concurring:

I concur in the judgment of this Court affirming the district court, although I would hold there was no error in admitting the notebook into evidence. The decision on this point is, of course, dictum: a decision that need not have been made because we decide that any error was harmless. I agree with that controlling decision.

In my judgment, the notebook was admissible in this case despite the uncertainty as to its true author. The plain language of Rule 801(d)(2)(E), and of the Supreme Court's opinion in *Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 2778-79, 97 L.Ed.2d 144 (1987), only required the court to determine that a conspiracy existed between the author of the notebook (whoever that might have been) and the defendant, and that the statements in the notebook were made in furtherance of the conspiracy. This did not require the court to identify which of several potential conspirators actually authored the notebook.

Our circuit and several other circuits, with the exception of the Ninth, have held that anonymous documents which record the activities of a criminal conspiracy may properly be admitted under Rule 801(d)(2)(E) when there is some independent evidence corroborating the reliability of the document. *See, e.g. United States v. Christopher,* 923 F.2d 1545, 1551 n. 3 (11th Cir.1991). *See also United States v. Smith,* 918 F.2d 1501, 1510-11 (11th Cir.1990), *cert. denied,* 502 U.S. 849, 112 S.Ct. 151, 116 L.Ed.2d 117 (1991) (anonymous drug ledgers admissible); *United States v. Dynalectric Co.,* 859 F.2d 1559, 1581-82 (11th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 1642, 104 L.Ed.2d 157 (1989) (anonymous phone call made in course of antitrust conspiracy admissible); *United States v. Mazyak,* 650 F.2d 788, 791 (5th Cir. Unit B 1981), *cert.*

*denied,* 455 U.S. 922, 102 S.Ct. 1281, 71 L.Ed.2d 464 (1982) (logbooks found on a vessel smuggling marijuana admissible); *United States v. Postal,* 589 F.2d 862, 886 n. 41 (5th Cir.), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979) (same); *United States v. McGlory,* 968 F.2d 309, 334-38 (3d Cir.1992), *cert. denied,* 507 U.S. 962, 113 S.Ct. 1388, 122 L.Ed.2d 763 (1993) (handwritten notes found in defendant's garbage admissible against co-defendants even though no handwriting expert identified their author); *United States v. Helmel,* 769 F.2d 1306, 1313 (8th Cir.1985) ("we do not believe that positive proof of the declarant's identity, through handwriting analysis or otherwise, is necessarily essential to the invocation of the coconspirator rule"); *United States v. De Gudino,* 722 F.2d 1351, 1356 (7th Cir.1984) (anonymous lists of illegal immigrants admissible because "the contents of the lists clearly show that their author was familiar with the workings of the conspiracy."). *But see United States v. Gil,* 58 F.3d 1414, 1420 (9th Cir.), *cert. denied,* 516 U.S. 969, 116 S.Ct. 430, 133 L.Ed.2d 345 (1995) (government must prove by a preponderance of the evidence the author of anonymous documents).

The anonymous notebook was found by the police in the home of Mark West, an integral member of the conspiracy, and the entries in the notebook corresponded with drug transactions proved by other evidence at trial. The notebook was properly admissible as the statement of a coconspirator.