[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14040
Non-Argument Calendar

_____

D.C. Docket No. 3:89-cr-00074-TJC-MCR-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GREGORY ROBINSON,
a.k.a. Dusty,
a.k.a. Darnley Wane Maturin,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 27, 2019)

Before TJOFLAT, MARCUS and JORDAN, Circuit Judges.

PER CURIAM:

Gregory Robinson, a federal prisoner serving two life sentences plus two 40-year sentences for various counts relating to conspiracy and possession with intent to distribute crack cocaine and possession of powder cocaine with intent to manufacture crack cocaine, appeals the district court's denial of his motion to reduce his sentence, pursuant to 18 U.S.C. § 3582(c)(2), based on Amendments 782 and 750 to the Sentencing Guidelines. On appeal, he argues that: (1) the district court impermissibly reexamined the sentencing record for evidence of drug quantity in violation of the law-of-the-case doctrine; and (2) the district court clearly erred in recalculating the amount of crack cocaine involved in Robinson's offense by converting the quantity of powder cocaine one of his co-conspirators had delivered to crack cocaine. After thorough review, we affirm.

We review de novo the district court's conclusions about the scope of its legal authority under § 3582(c)(2). United States v. Colon, 707 F.3d 1255, 1258 (11th Cir. 2013). We review the district court's factual findings for clear error. United States v. Tellis, 748 F.3d 1305, 1308 (11th Cir. 2014).

First, we are unpersuaded by Robinson's claim that the district court violated the law-of-the-case doctrine in his § 3582 proceeding. Section 3582(c)(2) allows a district court to reduce a defendant's term of imprisonment if a defendant was sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c)(2).

2

This relief is only available for amendments listed as retroactive in the Sentencing Guidelines, such as Amendments 750 and 782. U.S.S.G. § 1B1.10 (2016). In § 3582(c)(2) proceedings, courts determine the amended guideline range that would have applied if the amendment were in effect at the time of the initial sentencing but leave all other Guidelines application decisions undisturbed. Dillon v. United States, 560 U.S. 817, 827 (2010). A § 3582(c)(2) proceeding does not constitute a de novo resentencing, and "all original sentencing determinations remain unchanged with the sole exception of the guideline range that has been amended since the original sentencing." United States v. Bravo, 203 F.3d 778, 781 (11th Cir. 2000). A district court properly denies a § 3582 motion where the uncontroverted drug quantity listed in the presentence investigation report ("PSI") establishes that the defendant would be subject to the same guideline range, even after a retroactive amendment to the Guidelines. United States v. Davis, 587 F.3d at 1300, 1303–04 (11th Cir. 2009). The defendant bears the burden of proving his eligibility for a § 3582(c)(2) sentence reduction. United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013).

In Hamilton, we vacated the denial of a defendant's § 3582(c)(2) motion based on Amendment 750, which raised to 8.4 kilograms (from 4.5 kilograms) the amount of crack cocaine necessary for a base offense level of 38, and remanded to the district court for an accurate determination of Hamilton's original drug quantity. Id. at 339–41. We held that the district court's finding that Hamilton was responsible for "at

3

least 1.5 kilograms" at the sentencing hearing was not specific enough to support any conclusion about whether a reduction under Amendment 750 was warranted. Id. at 340. We remanded for the district court to decide, first, "what drug quantity findings it made, either explicitly or implicitly, at Hamilton's original sentencing hearing." Id. Next, if the district court's original finding was not "specific enough" to help decide whether Amendment 750 lowered Hamilton's base level, i.e., limited to "at least 1.5 kilograms," we instructed the district court to examine the entire record available at sentencing to see if it could make further findings consistent with its previous findings. Id. We cautioned the district court not to refer to any material that was not available at the original sentencing hearing. Id. If, after looking at the record, the court still could not decide whether the drug quantity lowered Hamilton's guideline range, he would be ineligible for relief. Id. at 340–41.

Under the 1988 Sentencing Guidelines, a base offense level of 36 applied if the defendant was accountable for more than 0.5 kilograms of crack cocaine. U.S.S.G. § 2D1.1 (1988). Amendment 706 to the Sentencing Guidelines reduced the threshold quantities for crack cocaine in § 2D1.1(c), so a base level of 36 applied to 1.5 to 4.5 kilograms of crack cocaine. See U.S.S.G. App. C., Amend. 706 (2016). Amendment 782 to the Sentencing Guidelines again reduced the threshold quantities for crack cocaine in § 2D1.1(c) -- as of 2016, a base level of 36 applied to 8.4 to 25.2 kilograms of crack cocaine. See U.S.S.G. App. C., Amend. 782 (2016).

4

An earlier appellate decision is binding on all subsequent proceedings unless the case fits within one of the exceptions to the law-of-the-case doctrine. United States v. Tamayo, 80 F.3d 1514, 1520 (11th Cir. 1996). Those exceptions occur where there is new evidence, where the appellate decision is clearly erroneous and would cause manifest injustice, or where an intervening change in controlling case law dictates a different result. Id. In United States v. Green, which arose in the context of a defendant's second appeal, we considered whether the law-of-the-case doctrine had required the district court to make a certain finding as to drug quantity, or whether the court had properly reexamined the record for evidence of drug quantity to conclude that it had held Green accountable for 32.1 kilograms of crack cocaine at sentencing. 764 F.3d 1352, 1356–57 (11th Cir. 2014). In Green's second appeal, we said that the district court had acted exactly as Hamilton instructed by examining the entire record before it at the time of the original sentencing to see if it could make any further findings. Id. at 1357. We then held that a sentence in our first opinion -- that, applying a new amendment, Green's base offense level "was lowered by two to 36," based on the sentencing court's original finding that Green was responsible for more than 1.5 kilograms of crack cocaine -- was not a finding of fact, but rather an assumption for the sake of considering his argument, and did not bind the district court when it heard his second motion for a reduced sentence. Id.

5

Here, the district court did not err in Robinson's § 3582 proceeding when it reexamined the existing record to determine the drug quantity Robinson was responsible for at sentencing. As the record reveals, the law-of-the-case doctrine does not apply because we did not make a binding factual finding as to the drug quantity in Robinson's past appeal. See Green, 764 F.3d at 1356–57. Rather, we merely noted that the sentencing court had found that Robinson's offense conduct involved "in excess of five hundred grams of cocaine base." United States v. Robinson, 325 F. App'x 876, 876 (11th Cir. 2009) (quotation omitted). Just as in Green, where we had assumed for the sake of argument that Green was entitled to a reduction in his offense level but did not make a fact-finding in so doing, 764 F.3d at 1356–57, our panel in Robinson's first appeal did not make a fact finding by repeating the sentencing court's indeterminate drug quantity finding. And our holding that the sentencing court had improperly relied on its "recollection" of the evidence was not a holding that the district court could not revisit that finding; it only rejected the district court's method for making a new drug-quantity determination. See Robinson, 325 F. App'x at 876.

As for our instruction in Hamilton -- to examine the entire record available at sentencing to see if the court could make any further findings that were consistent with its previous findings, 715 F.3d at 339–41-- it was consistent with our earlier holding in Robinson's first appeal. There, we held that the district court could not

6

rely on its recollection of the evidence at sentencing to determine Robinson's precise drug quantity, which is consistent with Hamilton's instruction to district courts to clarify imprecise drug findings by reexamining the PSI and the record available at sentencing. Thus, the district court did not err in this case when it reexamined the sentencing record for evidence of drug quantity in ruling that he was not eligible for a sentence reduction under Amendment 782.

But even if we were to construe our ruling in Robinson's first appeal as barring district courts from reexamining sentencing records, the district court did not err in following Hamilton. See Tamayo, 80 F.3d at 1520. Hamilton -- a published panel decision issued after Robinson's first appeal, which was unpublished -- requires district courts in § 3582(c)(2) proceedings to examine the record for evidence of drug quantity if the original drug quantity findings were insufficiently specific to decide whether a retroactive amendment reduces the defendant's guideline range. See Hamilton, 715 F.3d at 340–41. Thus, to the extent Hamilton represents a change in controlling precedent, it meets the exception to the law-of-the-case doctrine, and the district court did not err by reexamining the record for evidence of drug quantity.

We also find no merit to Robinson's claim that the district court clearly erred in recalculating the amount of crack cocaine involved in Robinson's offense. To sentence a defendant under the crack cocaine schedule, a district court determines the amount of crack cocaine that would be produced from the amount of powder

7

cocaine involved.  United States v. Singleton, 545 F.3d 932, 934–35 (11th Cir. 2008).  Calculations of drug quantities must be fair, accurate, and conservative, and not speculative in nature.  Id.  So where the record lacks sufficient evidence as to the amount of crack cocaine that would be produced from the amount of powder cocaine involved, we've held that the district court should resentence the defendant according to the powder cocaine schedule.  United States v. Chisholm, 73 F.3d 304, 308–09 (11th Cir. 1996).  In Singleton, we held that evidence that a defendant intended to convert some powder cocaine to crack cocaine was insufficient to hold him accountable for the conversion of all powder cocaine involved in the case because the amount of crack cocaine for which he was held accountable was speculative, and thus, clearly erroneous.  545 F.3d at 934–35.

Here, the district court properly ruled that Robinson's sentence was ineligible for reduction under Amendment 782 because Robinson failed to show he was responsible for less than 8.4 kilograms of cocaine.  For starters, the sentencing court's original finding that Robinson was responsible for "in excess of [500] grams of cocaine base" was not specific enough to support any conclusion about whether Robinson was entitled to a sentence reduction -- much like the sentencing court's finding in Hamilton that he possessed "at least 1.5 kilograms," 715 F.3d at 339–41.  Consistent with Hamilton, the district court then examined the record available to the sentencing court.  Based on that record, the district court found that Robinson

8

was responsible for 20.5 kilograms of powder cocaine, and multiplied this number by 78% to convert it to 15.99 kilograms of crack cocaine, which far exceeded the minimum 8.4 kilograms necessary for a base offense level of 36.

We cannot say the district court clearly erred in making its findings. First, the district court did not clearly err when it found that Robinson was responsible for the 20.5 kilograms of powder cocaine transported by a coconspirator, Caroline Taylor. As the record reflects, the sentencing court had previously adopted, over Robinson's objection, the PSI's statements that Taylor had transported at least 20.5 kilograms of powder cocaine for the conspiracy. Taylor's uncontroverted trial testimony also established that she transported 20.5 kilograms of cocaine for Robinson over at least 4 trips from Miami to Jacksonville and Orlando.

Nor did the district court clearly err by finding that all of the powder cocaine Taylor transported was converted to crack cocaine. As the record reveals, the sentencing court had adopted paragraphs of the PSI providing that the purpose of the conspiracy was to convert powder to crack cocaine and distribute it, and that after powdered cocaine was delivered to either Orlando or Jacksonville, Robinson or his managers cooked the substance into crack cocaine in a total of more than 13 locations purchased or rented at various times for the purpose of setting up distribution centers. Further, while no witness testified that all of the cocaine powder was sold as crack cocaine, the uncontroverted testimony at trial established that the

9

purpose of the conspiracy was to convert powder cocaine to crack cocaine for distribution and sale. For instance, a manager of one of the houses where crack was distributed testified solely to distributing crack cocaine, which he ordered from Robinson using a payphone multiple times per day. Another witness testified that she had counted out crack cocaine in one of the houses used in the conspiracy, saw crack cocaine in the house two to three times a week from March to May 1989, and, although she never saw powder cocaine turned into crack cocaine, smelled it in the house and knew it was being manufactured in the kitchen a few times per week.

Finally, the district court's estimate that the proper conversion rate from powder to crack cocaine was 78% was not clearly erroneous because it was fair, accurate, conservative, and not based on speculation. Singleton, 545 F.3d at 934–35. According to the testimony of a law enforcement officer at trial, Robinson had been upset with one of his codefendants in a recorded phone conversation because the powdered cocaine he had cooked into crack was only 78% pure. While Robinson claims that this evidence was not specific enough to determine the conversion rate, he cites no specific authority for this argument nor does he to articulate why it was not sufficiently reliable. Indeed, the testimony reflects Robinson's own calculation of the conversion rate at 78%, a rate he believed to be lower than ideal. On this record, we cannot say that the 78% conversion rate was unfair or inaccurate. Id.

10

In sum, the district court did not clearly err when it found that Robinson was responsible for 15.99 kilograms of crack cocaine, which rendered him ineligible for a sentence reduction under Amendments 750 or 728.  Accordingly, we affirm.

**AFFIRMED**.